[No 263.   Decided June 26, 1891.]

H. E. PARRISH v. THOMAS M. REED, *Auditor of the State of Washington.*

MINING BUREAU—POWERS—MANDAMUS—PRACTICE.

The act creating a mining bureau and defining its powers (Laws 1889-90, p. 249) does not authorize the mining bureau either to direct or superintend a geological or mineralogical survey of the state, nor to disburse moneys appropriated for such purpose.

The act of March 7, 1891, appropriating moneys "for making a geological and mineralogical survey of the state," does not expressly nor impliedly enlarge or define the powers and duties of the mining bureau, and make it the agency whereby the same is to be expended.

In an application to the supreme court for *mandamus*, no alternative writ will be issued, unless the allegations in the petition therefor make out a *prima facie* case for the issuance of a peremptory writ.   (Opinion on rehearing.)

*Original Application for Mandamus.*

*D. E. Baily, Wm. S. Church,* and *B. F. Dennison,* for petitioner.

The opinion of the court was delivered by

ANDERS, C. J. — This is an application by the plaintiff, upon motion and affidavit, for a writ of mandate commanding the respondent, who is state auditor, to draw his warrant upon the state treasurer in favor of the plaintiff for the payment of a voucher certified to by the president and secretary of the mining bureau for $150, alleged to be due and owing to plaintiff for services as assistant state geologist for the month of May, 1891. It appears from the affidavit accompanying this motion that the mining bureau, at a regular meeting held at Olympia on April 9, 1891, at which a majority of its members was present, directed a geological survey of the state to be made, and that, in furtherance of that determination, at a subsequent regular

meeting, held on April 20, 1891, the said mining bureau, by a majority of its members, employed the plaintiff, the said H. E. Parrish, to perform labor and services in the field in assisting to make such survey, at a compensation of $150 per month, payable monthly; that, in pursuance of said employment, the plaintiff performed labor and services in the field in assisting to make such survey during the entire month of May, 1891; that at a regular meeting held at Olympia on June 13, 1891, the said mining bureau examined, audited and allowed the voucher, bill and claim of plaintiff for his said services during said month, which voucher, bill and claim amounted to the sum of $150, no part of which has been paid; and that the same, after having been so examined, audited and allowed, and after having been indorsed and signed by the president and secretary of the said mining bureau as correct, was presented to the respondent at his office in the city of Olympia, and a warrant therefor upon the state treasurer demanded of said auditor, who refused to draw any warrant therefor, and rejected said voucher. It further appears from the said affidavit that the reasons assigned by the respondent for rejecting the voucher and refusing to draw a warrant upon the state treasurer, as requested by plaintiff, were "that, upon examination of the law creating a mining bureau, and defining its duties, approved February 25, 1890, I fail to find any provision whereby it is authorized to superintend a geological survey of the state, or is given the power to audit the claims incurred by parties engaged in the performance of such service;" and that "the provision in the general appropriation act of March 7, 1891, making an appropriation for a geological and mineralogical survey of the state, does not designate any officer or commission whose duty it shall be to expend the same; and I am therefore of the opinion that the appropriation herein referred to cannot be drawn until further legislation has been had upon the subject."

From the foregoing it is apparent that the controversy in this case is simply the result of a difference of opinion between the plaintiff and respondent as to the powers and duties of the mining bureau, as defined and prescribed by law. It was the manifest duty of the auditor to draw the warrant demanded by plaintiff, if there is any law authorizing the issue of the same, and if the claim or voucher of the plaintiff is properly audited and allowed; but, if there is no such law, then such refusal was in every sense proper, and strictly in accordance with his official duty. See Laws 1889–90, p. 637, § 6. As has been seen, the respondent claims that no provision has been made by the legislature authorizing the mining bureau to direct or superintend a geological and mineralogical survey of the state, or to audit or allow any claim against the state, incurred by parties engaged in the performance of such service. The powers and duties of the mining bureau are defined in the act of the legislature entitled "An act to create a mining bureau, and to define its powers and duties, and declaring an emergency," approved February 25, 1890 (Laws 1889–90, p. 249), and are as follows:

"SEC. 3. It shall be the duty of the mining bureau to collect reliable statistical information concerning the production and reduction of all precious and useful minerals of this state, and examine the different processes for the treatment of ores used in this state; to inquire into the merits of other processes alleged or demonstrated by practical experience elsewhere to be the most successful; to inquire into the relative merits of the various inventions, machines and mechanical contrivances now in use, or which may hereafter be introduced for mining and metallurgical purposes; to keep on file in their office reports and papers which may be published from time to time, and all correspondence on the subject of mines and milling and reducing ores, with the view of eliciting and collecting such information for the public use. They shall address circulars to corporations and individuals engaged in mining, and

shall correspond with the school of mines in other states in reference to the mining and metallurgical interests. They shall make a report to the governor, for transmission to the legislature, of the operations of the bureau on or before the fifteenth day of January in each year for the year ending on the thirty-first day of December of the preceding year, which report shall contain all statements of accounts, money received and expended, statistics, and other information which may tend to promote the development of the mineral resources of the state, and such other reports from time to time as they may deem necessary. They shall examine, audit and allow all bills which relate to expense of money received by or appropriated for this purpose; they shall co-operate with the bureau of statistics, agriculture and immigration; they shall be allowed to employ such clerical assistance as may be necessary to carry out the full intent of this act."

Upon a critical examination of this act, it will be seen that there is no expression of the legislature therein indicating an intention to authorize the mining bureau either to direct or superintend a geological or mineralogical survey of the state, or to disburse the moneys appropriated for such purpose. It is simply authorized to collect certain reliable statistical information, specified in the act, and to examine, audit and allow all bills which relate to expenditure of money received by or appropriated for that purpose, the expenses under its provisions being limited to $1,500. Nor do we think the powers or duties of the mining bureau have been in any way enlarged or changed by any provision contained in the general appropriation act of March 7, 1891. By that act the sum of $50,000 was appropriated "for making a geological and mineralogical survey of the state, and making and publishing maps and reports of the same," but the act is silent as to the method or agency whereby the same is to be expended. Indeed, if the legislature had attempted to enlarge or define the powers and duties of the mining bureau in the general appropriation act, the provis-

ion would have been nugatory, as being in contravention of that portion of the state constitution which declares that "no bill shall embrace more than one subject, and that shall be expressed in the title." Const., § 19, art. 2. It was no doubt the intention of the legislature when it made this liberal appropriation for the purpose of ascertaining and thereby assisting in the development of the mineral resources of our state, to further provide for the expenditure thereof, and it is probable that it intended to impose that duty and responsibility upon the mining bureau. But we find nowhere in the law any express, or even implied, indication of that intention. Owing to its importance and its probable effect upon the mining interests of this state, we have carefully considered this case, and we are unable to resist the conclusion that the appropriation above referred to cannot be disbursed, or warrants thereon legally drawn, without further legislation upon the subject. It follows, therefore, that the motion of the plaintiff must be denied.

SCOTT and DUNBAR, JJ., concur.

HOYT, J. (*concurring*). — I fully concur in what has been said by the chief justice in deciding this case, and I do not desire to add anything as to the merits of the controversy; but, in view of what was said by the attorneys for the petitioner at the time of the application for the writ, to the effect that they supposed the alternative writ would issue almost as a matter of course, I desire to say a word as to the course and practice of this court in matters of this kind. · The writ of mandate is not a writ of right of as high an order as a writ of *habeas corpus*. The latter writ is, of course, of the very highest right, and is regarded of such importance that it is secured and protected by the constitutions of nearly all the states. Yet even the writ of *habeas corpus* does not issue as a matter of course. The facts alleged in the petition therefor must be such that, if

true, they would, in the opinion of the court, warrant the
discharge of the petitioner.   The facts stated in the peti-
tion are taken as true, and the court determines therefrom
whether or not they would warrant a discharge of the peti-
tioner, and if, in its opinion, they would not do so, then
the courts do not hesitate to refuse even this writ of high-
est right.   See Church on Habeas Corpus, § 99.   If this is
true as to the writ of *habeas corpus*, it follows that the
courts will scrutinize somewhat carefully the allegations
of the petition for a writ of mandate, which is not a writ
of such high right, and will only grant the alternative writ
when, in its view of the law, the facts stated in the peti-
tion, if uncontradicted, will authorize the issue of the per-
emptory writ.   Such has been the practice of the courts
of nearly all the states of this union.   The practice of
this court has been to allow counsel for the petitioner, at
the time he makes application for the alternative writ, to
make such brief suggestions as he may think proper, and
with such suggestions the court takes the papers, and if, in
its opinion, a *prima facie* case is established, orders the
issue of the alternative writ; and if, in its opinion, such
petition does not set out facts constituting a *prima facie*
case for the issue of the mandatory writ, it denies the ap-
plication for the alternative writ, and dismisses the peti-
tion.   In this case, however, the court realized the great
importance of the questions involved, and, although upon
an inspection of the papers it was satisfied that a *prima
facie* case was not made out, departed from its usual cus-
tom, and notified counsel for the petitioner that they might
present arguments in support of the petition, which was
done; and able counsel, at such length as they saw fit, argued
as to the sufficiency of the petition to warrant the issuing of
the writ.   After such argument, the court being still of the
opinion that the petition did not state facts warranting the
issue of the writ, could not do otherwise than refuse it.

It cannot be held that the legislature intended, in providing for writs of mandate, that any person, simply by coming into court and filing a petition without any merit therein, could properly put a public officer to the expense of employing counsel and making a return to an alternative writ issued upon such insufficient petition. Besides, in this case the reasons why the auditor had refused to do the acts sought to be compelled by the petitioner fully appeared in the petition, and, in the opinion of this court, were warranted by the law of the case. This being so, there was but one duty for the court to perform, and that was to sustain the auditor in his refusal to do said acts.

STILES, J. (*dissenting*).—Section 26 of article 2 of the constitution provides that the legislature shall direct by law in what manner and in what courts suits may be brought against the state. Upon this subject no legislation has been had, and it is therefore assumed that there is no present way by which a claimant against the state may have his rights adjudicated. In the present case the petitioner claims to have performed services for the state, and seeks as his only remedy a *mandamus* against the auditor. Under such a state of facts I think that the courts should be somewhat liberal in the granting of alternative writs, and that in this case the alternative writ should be issued, as it is only after the issuance of the alternative writ that the petitioner has any real opportunity to have his cause presented by counsel and argued to the court. For this reason I do not agree to the decision of the court, and express no opinion on the merits of the application.

### ON PETITION FOR REHEARING.

HOYT, J.—In the petition for a rehearing in this cause it is strongly insisted that the court should have granted the alternative writ, even although it was of the opinion

that the peremptory writ would be denied on final hearing. In the opinion rendered we attempted to show that to do this was not according to the practice of the courts, and that in this court, at least, such had never been the course adopted. We only desire to say a word in addition to what was then said. The respondent in such a proceeding is not necessarily called upon to answer such alternative writ by showing cause why the peremptory writ should not issue, instead thereof he may return that he has done the act which it is sought to compel. If he should take this course the alternative order of this court would probably be a complete justification for the act, however illegal. In the case at bar, if the court had granted the alternative writ, the auditor might have issued the warrant in question and returned his action in so doing as a complete answer to said writ. And it would have followed that the order of this court would be pleaded as justification for an act which was in its opinion, clearly illegal. The above statement clearly shows that the course contended for by the petitioner would be an improper and dangerous one.

A further contention is, that the petition on its face *prima facie* established the right to the relief prayed for. This is probably true if we were bound by the conclusions of law therein pleaded. If this court was bound to accept as true the twelfth paragraph of the petition, there would be little left to be decided. Said paragraph is as follows:

" *Twelfth.* That the said Thomas M. Reed was at all times mentioned herein and now is the duly elected and qualified auditor of the State of Washington; and that it was then and now is, his duty enjoined by law to draw his warrant upon the state treasurer for the payment of said voucher, bill and claims; but he unlawfully refused and still refuses so to do."

What is herein alleged as a *fact* is the very question of law that the court was expected to decide. It needs no argument to prove that this and other conclusions of law

could not be taken as true simply because alleged in the petition. The court was bound by the allegations of *fact* in the petition, and if, assuming them to be as stated, it was of the *prima facie* opinion that the peremptory writ should issue, then the alternative writ should have been granted; but if from such facts the court was of the opinion that the peremptory writ would be denied, then the alternative one was properly denied. In other words, it would have been idle to call upon the respondent to answer a petition which did not, in the opinion of the court, even *prima facie* state a cause of action. Besides, in this case it appears from the petition that the auditor had substantially admitted the main facts pleaded therein, and had stated his view of the law to be directly contrary to the theory of the petitioner. It would have followed that, if the alternative writ had issued, he might well have thought that the court must be of the same opinion as the petitioner, as to the law applicable to the facts, and, as he could not deny the facts, that he ought to accept the view of the court as to the law, and, as directed, issue the warrant at once, and stop further contention.

This was a cause of importance to the public, and the court for that reason heard the petitioner much more fully than usual. When the petition was presented full argument was allowed, and the matter taken under advisement, and upon a conclusion being reached that there was no merit in the petition, instead of at once entering an order of dismissal, the counsel for petitioner were called and an intimation as to the situation given, and further argument allowed. We have carefully examined the able argument on the merits contained in the petition for rehearing, but our opinion has not been changed thereby. For, while it is true that several ingenious theories have been presented upon which it could be held that the legislature *might* have intended to legislate as claimed, yet none of them satisfy

us that in fact such *was* the intention; and for this court to hold that money could properly be paid out of the funds of the state because the legislature might have so intended, or even because it did so properly intend, would establish a precedent that would threaten greater evils to the commonwealth than will the delay for a few months of the work of the mining bureau, however important it may be. It is the contemplation of our constitution that money should only be paid out of the treasury of the state under and by virtue of some positive provision of law, and before this court will coerce the administrative officers into making such payments, the authority for so doing must appear with reasonable certainty.

The petition is denied.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.